The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. All right, we're ready to hear argument in our first case and Mr. Alderdice, it will be a pleasure to hear from you. Thank you, Your Honor. Jake Alderdice of the law firm Jenner and Block. I represent the plaintiffs Disability Rights South Carolina, as we're all called, DRSC, Justice 360, and the South Carolina State Conference of the NAACP. And may it please the Court. The amended complaint in this case carefully details how rampant violence, daily isolation, and an utter lack of rehabilitative services continuously harm the plaintiff organizations and afflict the disabled children that DRSC was created by Congress and mandated by Congress to protect and advocate for. Can you speak up, as always, as a help to me? Certainly, Your Honor. Sorry about that. Thank you. If this Court were to uphold the District Court's decisions that are on appeal here, not only would it deny the plaintiffs and their constituents relief from grave constitutional violations, it would also represent a dramatic shift in established law. It would close the courthouse doors to long-accepted claims and claimants, and it would result in harmful and, in some cases, absurd broader consequences. To briefly sum up front, affirming the District Court's sua sponte dismissal on mootness grounds of DRSC's claims at the pleading stage would require a plaintiff like DRSC to continually re-plead its members' harms over the course of the litigation, rather than simply proving those harms. Well, apart from the mootness question, you have a threshold issue of whether you have standing and whether you have associational standing. That's right, Your Honor, and I'm happy to take that now. I think the District Court correctly found that there is associational standing in this case, following a large majority of cases that find that a protection and advocacy system like DRSC or PNA may bring claims on behalf of its disabled constituents. The Fifth and Eighth Circuit have found no associational standing in situations like this? That's right, Your Honor. So the Fifth and the Eighth Circuits are two courts that have found no standing in that case. So we already have a circuit conflict here. No matter what we do, there's going to be a circuit conflict. That's right, Your Honor. So the Ninth Circuit and the Eleventh Circuits have found that there is standing. There seems to be a unanimous array of District Courts, of several District Courts in this circuit that have found standing in that instance. I think courts in just about every other circuit than the Fifth and the Eighth find standing in these instances. The Fifth and Eighth Circuits briefly addressed the issue, and whether it was a matter of a pleading failure there or just a brief analysis, the reason for their finding there was that they found that the disabled constituents don't meaningfully drive the activities. I'll get to my main point of concern here, and that is that this whole suit seemed to me to have sort of a phantom quality, that I never was able to figure out exactly who the plaintiffs were, where they resided, how they were injured. In other words, a constellation of questions greeted me when I read these briefs about the basic question that invokes Article III power, which is a particular plaintiff has been injured in a particular way, and this case is shrouded in mystery. We don't know who the plaintiffs are. We don't know how they've been injured. We don't even know where they are. Respectfully, Your Honor, I think my clients, and we spell out in detail in the amended complaint the injuries that affect them both associationally, that affect specific children that are spelled out in the complaint in several instances through severe violence that impacts them. But all you've done is give them numbers. You know, there's child number one, child number two. I mean, you could do that with anybody. I mean, normally these things, for reasons of privacy, at least, you know, we understand sometimes that you want initials rather than to spell out a name, and there are considerations of privacy there that make sense to me, but, you know, this is just putting a number to people. It could be something you just pull out of the desk drawer. Well, a couple of responses to that, Your Honor. One, I don't think there's a very meaningful, at least as a constitutional matter, difference between a pseudonym and a number. There are specific facts alleged as to these individuals, and if the defendants think that we're making that up, I think that's a question for discovery. But there are many specific allegations as to the children that are spelled out there and that are harming DRSC's constituent side. The specific allegations seem to go to the conditions, but the conditions question is different from the standing and plaintiff identity. Well, the conditions lead to the injuries, the severe injuries in this case, directly. Some of the conditions are widespread violence across all the facilities. That is due to several systemic violations and failures. You're familiar with the Lewis versus Casey decision? Because the Supreme Court in that particular case indicated that if you went directly, if any organization was free to go into any court and start complaining about conditions here and conditions there and everything, and an organization can do that, then what you've done is you've blurred the distinction between judicial authority and executive authority, and you've postured the courts as overseers of the prison system, which is, after all, you would agree, an executive function. I would agree with that, Your Honor, but respectfully, this case is miles afield from the Lewis case. That was truly a generalized grievance about, I think in that case, the failure to maintain a law library. Here we have specific injuries alleged as to the both constituents of DRSC and the organizational parties. You have specific conditions, but that's different from specific injuries to named or initial plaintiffs. There are specific injuries alleged as to the individuals laid out in the complaint that are the constituents of DRSC, and we're bringing this case on behalf of them. Sorry, so when you say constituents, I just want to clarify, these are not members. This is not a membership organization, right? No, that's right. So it doesn't satisfy the Hunt criteria. So the majority of courts to consider this question have found that it does satisfy the Hunt criteria because that was a case where there were not members. Well, Hunt says that it was okay there because associational standing, they possess, quote, all of the indicia of a membership organization. That's right. So it doesn't seem that anyone thinks, even the courts that agree with you, that these sorts of organizations have all the indicia of membership in an organization. I think the large majority of courts that have found that they do agree, say that they do have all the indicia. No, they don't. They say they have enough. Okay. They have enough indicia. But I think the question is whether there is enough indicia to show that they meaningfully drive the organization's activities. Well, your organization, it has an authority to represent individuals, right? That's right. It was congressionally mandated to represent these individuals, and it was also, it's made up of these individuals. But that's not what you're doing here, right? You're not claiming that a particular individual has given you the authority to sue on their behalf. You're not representing any individual that you've identified. But that's not required by the statute. But that's not what you're doing, right? You're claiming harm to your entity. No, it's both. I think it's the children, 5 through 13, that were specified in the complaint. As we allege, their guardians authorized DRSC to seek relief on their behalf. But I would also say that that's not required. That it is within its mission, as many other P&A systems have in other cases, in juvenile justice cases, sought relief for systemic harms that are affecting their constituents. That's well specified by Congress in the statute. And so that is part of it, is that that's its mission. But it's also made up, its board is made up by a significant amount of people with mental disabilities. It has an advisory council. I think Judge Rushing makes a good point. It's very difficult to equate statutory constituents with membership. Because members do have at least some input into the organization and into its activities. And statutory constituents, they're just there whether they have an input or whether they don't. And this gets back to a problem that I'm having here. Because if we take statutory constituents as full-fledged members without sufficient indications that they're actually participating within the organization in the way that members do, aren't we shifting the whole center of gravity of litigation from individuals to advocacy organizations? And if litigation becomes a matter of advocacy organizations, that runs the risk of leaving the traditional concept of a lawsuit as being something brought by individual people who are hurting individually. And we're in danger of having the organization be the litigants and the actual individuals being left in the dust. And that just transforms the nature of litigation and what I think is a basic concept in the Article 3. That it has a concrete controversy rather than an abstract controversy between an organization finding problems with the prison system. Now there may be difficulties. I'm sure you have a worthy cause. And there may be difficulties with the prison and the way it's run and there may be problems with the conditions. But there's a way to bring those problems out. And that is to get some actual people, name them, represent them, indicate how they've been harmed concretely by these prison conditions. Because I don't doubt that the prison conditions may be wanting and there may be constitutional violations there. But it's a question of how you bring those out. And this seems to me a very troublesome vehicle because I think it runs into problems as I'm able to understand them with the Supreme Court. Your Honor, I see my time is up. May I respond to that? Yeah, go ahead. You've got a good bit of time for rebuttal. Do you want to say that? I do. May I respond to that and then reserve the rest of my time for rebuttal to Your Honor's question? You can take your time now, but it will come off the rebuttal. Okay, I'll just briefly respond to Your Honor's last point, which is that my concern here is the decades of Supreme Court precedent that I think the district court's decision would run contrary to. Well, I think the district court's standing decisions are consistent with that in that we have organizations that are permitted by havens, as the Supreme Court found just last year, authorizing the very theory of organizational standing that we assert in this case. Okay, and while you're preparing your rebuttal, you might want to check a couple of cases. You might want to check the Hunt case that Judge Rushing referred to, and you might want to check the Lewis v. Casey case, which I have referred to, and you might want to look again at those Eighth Circuit and Fifth Circuit decisions and decide, well, maybe they have something to them. I will, Your Honor. I'll reserve the rest of my time for rebuttal. Thank you. Okay, thank you. Ms. Richardson, we'd be pleased to hear from you. Thank you, Your Honors. Good morning. Beth Richardson here for Appelese, the South Carolina Department of Juvenile Justice and Executive Director Eden Hendricks. Whether it be on grounds of mootness, standing, or 12v6, a common thread exists here. Plaintiff's complaint was not proper, and this court should affirm the district court dismissing this action. Before turning to the legal issues, I'd like to respond for a moment about appellant's accusations about the conditions existing at the Department of Juvenile Justice. The facts on the ground have changed since appellants initiated this action. We were directed to, at least the previous opponent, dealt primarily with standing, which is a threshold issue for us as a court. If standing, even if it did exist, and we found it moot, does that end the case? Judge Wynn, if I understand . . . I'm dealing with the associational claims. Yes. As to the associational claims, it's our assertion as it's been since the beginning of the case that references to Childs 5 through 13 was insufficient on the face of the complaint. Naming or pleading allegations sufficient to identify the person who is trying to establish standing is absolutely essential. I'm dealing with the associational standing, at least in terms of the fact, as I understand, no one is in custody there. Correct. That is correct. If there's no one in custody, do we deal with that, or do we deal with the standing perspective and consider the Hunt factors here, the indicia of membership, because they're not members, as Judge Rushen has pointed out, but Hunt did allow for standing in an instance where you could show indicia of membership. When you compare Hunt with this case, there seems to be a lot of similarity, at least in terms of the indicia of membership basis. Yes, Your Honor. Well, this court is allowed . . . Are you saying yes, there are? How do you address that? The court is allowed to affirm the district court on any grounds, and when it comes to standing, courts have, in the past, assumed standing in the original instance when there was mootness existing, clearly mootness existing at a later time in the case. That was my initial question. Yes. Can we just assume standing, and if we find mootness, does that end the case? You do have the authority to do that, and there is mootness in this case. And your mootness is based on the fact that none of them are incarcerated at this point. To state an associational standing claim . . . Yes. Hunt requires that an association allege that at least one of its members has standing in its own right, so that the association can rest its associational standing claim on that member's standing. Well, this is the thing about the associational standing and mootness questions overlap, in a way, because part of the problem that we're having is a mootness problem, because since we don't know anything about the plaintiffs, really, other than these number one, two, three that has been assigned, we don't know whether they're still in the institution or not. I mean, maybe they're still there, but maybe they've left. And this is all part of the basic problem here, is that there's a lack of concreteness, and there's a lack of specificity that just sort of has us fumbling around in the dark as far as the Article III requirements are concerned. And the mootness is one prong of that problem. Because we don't know where they are. Yes, Your Honor. I think this court in Southern Walk at Broadlands Association specifically found that when an association could not specifically identify one member who had suffered harm at the pleading stage, that the court was without jurisdiction to address those claims. Did they receive consent from the individuals here to represent them? Exactly, Your Honor. We still do not know to this day whether the disability rights received consent from any of the juveniles, parents, or guardians to assert their claims. What would be the obstacle to having someone identify, at least by their initials, and being asked for consent, and giving consent to be represented, and pointing specifically to that individual and how the conditions impacted that individual? What would be the obstacle to bringing suit in that form? Because we really are not talking here about slamming the courthouse door for any and all time. What we're talking about is to have this case brought forward with some of the indicia of a traditional lawsuit. Yes, Your Honor. The facts are wholly within disability rights knowledge as to who their constituents are and which one of them have suffered concrete, particularized injury in fact. It's concerning that they can't allege with more specificity who exactly they're hinging their claims on. In the Milwaukee case cited by Judge Austin in the court below, that case specifically states when finding that the associational claims were moot, that it really was no harm to the appellant there, because when the court dismisses for lack of jurisdiction, it's without prejudice. And it allows a party to rebring assert a claim when there's an actual injury in fact at any time. So at least understanding the implications of the Hunt test, there are basically three bases upon which I think you have to satisfy in order to get associational standards. And the Hunt test goes to the first one, which is the indicia of membership. Is that an element test or is it a factor test in terms of how we view that particular element? Because it seems to me you might satisfy that. As you say, you might assume that indicia of membership is there, but you still have the other two hurdles to overcome in order to be able to establish associational standards. Standing. Which of those do you rely upon primarily as the basis for saying there's not standing? On the indicia of membership test? Under the test for associational standing. The first one deals with indicia of membership, which deals with if members would otherwise have standing to sue as individuals. Yes. Well, we claim that the indicia of membership, the factors that were present in Hunt, are not all aligned with the disability rights system. But my question is, do you have to win on that in order to win? In other words, if the answer to that is, yes, there is an indicia of membership, do you still maintain there's a basis upon which you can rely upon to say there's still not standing? Oh, of course, because they have not specifically identified any member of their If you assume that there is an indicia of membership present, disability rights still hasn't yet to identify a specific member under which it rests its associational who has standing upon which it rests its associational standing. Which goes to the third problem with that, which is the participation of individual members. Well, that could go to the third prong of the indicia of membership test. But the Supreme Court in Summers has said for an association to establish standing in any case, it must identify at least one specific member who has a concrete and particularized injury upon which then the association can rest its associational claim. And I agree with you. I think Summers is a key case here. It's the case that deals directly with this issue. Yes, sir. All right. And in this case, the disability rights failed. What you're saying is that you've got multiple hurdles. Number one, you're saying if you don't have the indicia of traditional membership, the statutory constituent, as my good colleague Judge Rushing points out, is different. And then beyond that, there's also the lack of identification of the individuals involved and the lack of identification both as to the individuals involved and also with respect to the injury involved. That is never adequately alleged either. Yes, Judge Wilkinson. So it's just one hurdle after another after another after another. Yes, and if you follow Appellant's brief, then they go to another argument and they say, well, to establish associational standing, actually we don't need to identify any specific member because we have alleged that all of our members at DJJ or constituents at DJJ are suffering harm. That gets back to the Lewis versus Casey question that I'm talking about, and that is it's so easy to blur the distinction between judicial and executive authority and that basically what you start off with is that prisons are indeed a constituent part of the executive branch of government. And judicial supervision of the day-to-day operations of prisons is in the first instance an executive function. The Department of Corrections is an executive agency, and the judicial supervision has got to be the exception rather than the rule, does it not? Yes, Judge Wilkinson. And just to add to that, I believe the Supreme Court has stated that in the associational standing context, statistical probabilities about the harm that your constituents may suffer is insufficient to establish standing. And then this court in Southern Walk specifically rejected an association's claim that all its members suffered harm when it could not identify a single specific constituent's injury. The court in Southern Walk said that that kind of pleading stopped short of the line between possibility and plausibility. In addition, I want to go back to the fact that this case, the court should look at this case from the framework in which it was initially filed. Just 10 days before appellants filed this action, the Department of Juvenile Justice entered into a 148-paragraph settlement agreement with the Department of Justice, which addressed the very same concerns that appellants raised in this case. The crux of this case is appellants' belief that the Department of Justice did not require the DJJ to go far enough or fast enough. Well, they certainly haven't abandoned their suit in light of the settlement. That's correct, Your Honor. Now, the DJJ was part of the relief they sought. Didn't they seek to enforce? They sought, the plaintiffs seek to enforce the DOJ settlement on a more expedited timeline. That's correct, Judge Roshang. And just so you can look at this case in the context as time has gone on, the DJJ is now three and a half years into satisfying its obligations under the five-year runway that the Department of Justice has given to it to effectuate reforms. You know, it just seems to me, I mean, those facts are good facts that you're bringing up in terms of the settlement and the resulting actions continuing here. But it seems to me if you focus on Summers, which we have really not talked about Summers in the context of associational standing, but it seems pretty on point in terms of the view that if you don't have a member that's been named and you've not provided this pseudonymized type evidence, then you're just not able to meet the evidentiary requirements of Summers. And I don't know of another court that has found associational standing on this kind of facts here. And maybe that's the point with me that, as Judge Wilkerson alluded to, there are a lot of moving parts here. But I'm thinking, do you need to go through all the moving parts if you have a part that seems to be pretty strong on that point? Or does that, answering that, does that leave something open? Am I missing something? I mean, we could talk about in this year membership and go back and forth. And quite frankly, I look at Hunt and I put those facts beside this fact. It looks like to me there's an issue of membership. But that doesn't end it from my perspective. It doesn't end it. I don't think it ends it at all. Because then the Summers case kicks in, and that seems to be a focus that could just lead to a relatively straightforward result here without delving into settlements and delving into other things. Am I on point with this? Let me know if I'm missing. Because if you're telling me that if I focus just on Summers, that's not the end of this case, then I need to know that. Judge Wynn, I think this court, if it so chose, could leave the issue of an addition of membership to another day and decide this case on the Summers requirement that an association identify the member. You don't have to leave it at all. If it doesn't meet Summers, then you don't have to even, I mean, there's no issue of addition of membership to deal with. That's something that Hunt deals with. There's no another day on it. Hunt already tells you you can do it. Hunt did it in a case. And there are a lot of things in Hunt that sort of parallel with this. I mean, you've got constituents who are able to vote. You've got all kinds of stuff in Hunt. And so, you know, that, at the very least, it could be a close case on it. But my point seems to be, do you even have to deal with that if you have a strong position on the Summers case? It seems like, to me, a pretty strong case. Yes, Judge Wynn. I don't believe this court would need to deal with it and could decide the case on Summers. I also want to recognize that it's the court's responsibility to re- We also, our appellees have also raised the issue that Justice 360 and disability rights lacked organizational standing, meaning they failed to allege a cognizable injury in fact to the organizations themselves. They alleged an injury, but it's probably not the kind of injury that cases have recognized. I mean, these notice type, or I had to do more work kind of injury, or I couldn't use resources. I haven't seen that in the context of the kinds of injuries that satisfies the organizational standard test. Yes, Judge Wynn. I think the precedence from Haven's Hippocratic Oath, as well as Lane v. Holder in this case, foreclosed allegations that from parties who rest their injury on a government regulation of others, where those injuries are merely passed on down the line consequences. They want to proceed in a representational capacity, and here they are in a representational capacity. And any diversion from that has been of a rather trivial variety, and it seems to me if you want to represent somebody and engage in that sort of conditions litigation, that meeting several times a month or for two days a month is not much of a diversion at all. And it would seem to me to do the organization some good to have members of the board of the organization meet with the people that they claim to represent. And so these meetings with individuals and the juvenile clients, rather than being antithetical to the organization's efforts, would seem to me to be complimentary of it, because how can you represent people if you never come face to face with them? And to claim, oh, this would be a big diversion. No, it's not a diversion. These are the clients. It's not a diversion. And how can you be representationally effective if you have no contact with the people you're supposed to represent? And in addition, the diversion in the contact is rather of a de minimis variety. So I don't understand the suit from that perspective either, and that is that we're making litigation into a kind of – we're according organizations and advocacy groups and protective advocacy groups the premier position in litigation, and we're just leaving individuals way behind. And that individuals shouldn't be the caboose in all of this. They should be part of the engine. And that's a problem I'm having. Yes, Judge Wilkinson. The core of this court's Article III jurisdiction has been and is always grounded in an individualized and particularized concrete injury, and the first amended complaint fails to establish that. Thank you. Let's see. Judge Wind, do you have a question? I do not. All right. Thank you. Thank you, Your Honors. Mr. Aldenese, you reserve some time for rebuttal, sir. Thank you, Your Honor. And I know Your Honors gave me some homework in the break, so I want to start with that up front as well as getting to some points that my colleague, Ms. Richardson, made, which is to start with Hunt and associational standing. Hunt allows associations to bring a claim when they do not have specific members but when members show sufficient addition of membership. And the majority of courts have found that these very P&A systems that meet with their constituents every day, and Judge Wilkinson, I want to really emphasize that's not the harm being alleged here, either on an associational or organizational front, the mere fact of meetings. In fact, to briefly go into the organizational harm for DRSC, part of the harm is that they're not able to meet with their clients enough because of the threat of violence that those clients face and the specific effects alleged in the complaint that they've been brutally assaulted after meeting with their DRSC monitors. But to go back to associational standing, I think a large majority of courts have found that these P&A systems have associational standing to assert the claims of their statutorily mandated constituents because they satisfy that addition of membership, because those constituents make up the board and advisory council, as alleged, and so guide those activities. But even if you do, you still have to satisfy the Summers. Thank you, Judge Wynn. And then as to Summers, this is a threshold question. If we're talking about standing, we must assess the complaint when it was filed. And when we filed their complaint, we alleged nine specific children that are constituents of DRSC that we had permission from their guardians, as alleged in the complaint, and they are identified as child five through 13. I don't think there's a single case ever that has said a number is meaningfully different than initials. So if you had consent to sue on their behalf, why didn't you sue on their behalf? Why didn't you file a lawsuit under the initials of the child or even a class action, right? That's how we typically see these. Why proceed associationally when it's impossible to tell what the preclusive effect will be of this lawsuit? I think a few reasons, Your Honor, and I think the reason we do also see lawsuits like this brought by these P&A systems is, one, because when you have mentally disabled children in a correctional facility, the P&A, even though it meets with them regularly, is best in a position, as Congress recognized, to advocate on their behalf. It has lots of constituents. There are specific allegations in the complaint about just how many of those there are, in fact admitted by the defendants themselves, who acknowledge that of their hundreds of members, a majority have some form of mental illness. We raised that in our opening brief, that those show specific facts showing that there are at least dozens of constituents. So why does that answer why associational standing for your organization is better than a class action, where we can tell who the plaintiffs are and who will be precluded by a judgment in this case? Well, I think it gets at a few things. One is the vulnerability of this population. There are specific allegations that they may face violent retaliation if they were to step forward, even as a pseudonamed plaintiff. But, again, for standing purposes, I don't think there is a relevant difference between child one, child two, which have specific facts such that the defendants are able to know who these people are based on the specific facts alleged to them. It's not true that it's just within DRSC's knowledge and capacity who these constituents are. The defendants are detaining them, and they know the nature of this population, as they've admitted that there's a majority of them with mental illness. So we brought this, you know, these are my clients. They're facing a harm. And so I don't think I can say, should I go find another child or have them have to put up one of their mentally disabled constituents to be class actioned, when this is exactly how Congress and many courts have contemplated that they can seek relief. Is there a capable of repetition argument you have yet debate and review that would support associational standing? So the claims being live and not moot, Your Honor? Yes, we do lay out why there is, if this court were to find that it's moot, that is capable of repetition yet evading a review, because this is a transitory population. And so we filed this case and named these specific individual constituents, child five through 13. If this mootness holding were upheld, it's a dismissal without prejudice. And so, in theory, we could then file, again, with constituents 14 through 20 or 14 through 25, because, again, we do currently have constituents who are in the facility being harmed, subject to these severe harms. But the problem with that is that from filing until decision, in this case, it took about 500 days the first time, from filing of the complaint to the decision, to the first decision on the motion to dismiss, filing the amended complaint until the operative decision, I would think, was around 440 days. And that's just the motion to dismiss. If there's then discovery and everything, this is a transitory population. Where does the big delay occur? Is it in you failing to file on time, or is it response? Where is that 500 days coming from? So by local review, by local rule, these cases are referred to a magistrate judge. There's briefing. It goes to the magistrate judge. There's then objections to the magistrate judge decision. We've moved each time for a preliminary injunction, seeking relief, based on all the specific facts that we both lay out in the complaint and setting forth affidavits from both individuals that represent our clients, as well as people from children themselves. It just seems to me that if you say this is ongoing, we're going to see this again, because it depends on how an opinion comes from this court, whether it favors you or not. If it doesn't favor you, it may instruct you on how to do it better, and you simply will follow that. But your problem may well be if you've got to wait 500 days, you start with someone who's incarcerated. They may not be incarcerated after 500 days. The question is, is there some form of expedited type process that can address the concerns? Judge Wilkerson has alluded to the fact that we are sensitized to it. We are constrained by the law in terms of standing. But when we face these kinds of restraining hurdles of standing and other issues, the procedural issues, that keeps justice from at least coming to court, at least us getting to the merits of determining whether something should be done, that is in and of itself frustrating. So I'm just trying to determine, because it looks to me, as I said, I don't for one moment believe you aren't going to go back one way or the other on this, and this is coming back if those grievances still exist within the system. That's right, Your Honor, and I think that's why there are sufficient facts alleged and case law to show that these claims are not moved, that the district court was right, that there is associational and organizational standing here, which the district court found twice as organizational standing, and that these cases are not moved for the reasons set forth in the Mink decision, which is the only circuit court to address these same type of facts, and that was where a P&A system still had individuals in custody. All right. Thank you, counsel. Judge Wynn, do you have a further address? We thank you very much, and we'd like to come down and greet counsel and understand that you've taken this pro bono, Mr. August, and it warrants the court's appreciation for your doing that as well. Thank you, Your Honor. It's my honor. All right. Let us come down and say hi to you.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Allison J. Rushing